**Reversed and Remanded and Opinion filed May 19, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00456-CR

---

### ROMAN RAMIREZ-MEMIJE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1256139**

---

## O P I N I O N   O N   R E M A N D

A jury convicted appellant Roman Ramirez-Memije of fraudulent possession of ten or more but less than fifty items of identifying information, a second-degree felony. *See* Tex. Penal Code Ann. § 32.51(b), (c)(3). We hold that appellant suffered egregious harm from the inclusion of an unconstitutional mandatory presumption in the jury charge. Accordingly, we reverse the trial court's judgment and remand for a new trial.

## I.    BACKGROUND

The State presented evidence that appellant was a middleman in a credit card skimming operation.  Appellant obtained a credit card skimmer[1] from Dante Salazar and delivered it to Antonio Cercen, who was a waiter at a restaurant.  After Cercen used the skimmer to collect credit card numbers from the restaurant's patrons, appellant would retrieve the skimmer from Cercen and deliver it to Salazar.  Appellant testified and admitted to possessing the skimmer, but he denied knowing that the skimmer contained identifying information.   The primary contested issue at trial was whether appellant knew the skimming device contained identifying information.

In three issues on original submission, appellant argued that the trial court erred by (1) refusing to include in the jury charge appellant's requested instruction on voluntary conduct under Section 6.01 of the Texas Penal Code because there was evidence that appellant did not knowingly obtain or receive the identifying information; (2) including an unconstitutional mandatory presumption in the jury charge while failing to include the instructions about presumptions found in Section 2.05 of the Penal Code; and (3) admitting testimony that appellant was from Mexico and working illegally in the United States. *Ramirez-Memije v. State*, 397 S.W.3d 293, 295–96 (Tex. App.—Houston [14th Dist.] 2013), *rev'd*, 444 S.W.3d 624 (Tex. Crim. App. 2014).  This court sustained appellant's first issue and reversed for a new trial. *Id.* at 304.

The Court of Criminal Appeals reversed, holding that appellant's possession of identifying information was a voluntary act under Section 6.01(b) because appellant knowingly possessed the skimming device, 444 S.W.3d at 628, although

---

[1] According to witness testimony, a credit card skimmer stores information obtained from the magnetic strip on a credit card.

there was evidence that appellant did not know what the skimming device was and did not know what information it contained, *id.* at 625. The court remanded the case to this court for consideration of appellant's remaining issues. *Id.* at 628.[2]

We now address appellant's issue concerning the inclusion of an unconstitutional mandatory presumption in the jury charge.

## II.     JURY CHARGE ERROR

The application paragraph of the jury charge tracked the statutory language as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 22nd day of March, 2010, in Harris County, Texas, the defendant, Roman Ramirez-Memije, did then and there unlawfully, with the intent to harm or defraud another, possess at least ten but less than fifty items of identifying information, to wit: an electronic identification number of [list of twelve names], a living adult person, without said person's consent, then you will find the defendant guilty of fraudulent possession of identifying information, as charged in the indictment.

*See* Tex. Penal Code Ann. § 32.51(b). The charge further instructed the jury on a statutory presumption: "You are instructed that the defendant is presumed to have the intent to harm or defraud another if the defendant possesses the identifying information of three or more other persons." *See id.* § 32.51(b-1)(1). This is an unconstitutional mandatory presumption that effectively eliminated the State's burden of proof on the presumed fact of appellant's mens rea—his "intent to harm

---

[2] Judge Price suggested this court would "almost certainly reverse the conviction again" because the jury charge included an unconstitutional mandatory presumption without instructions appearing in Section 2.05 of the Penal Code. 444 S.W.3d at 632 n.20 (Price, J., dissenting).

or defraud." *See Garrett v. State*, 220 S.W.3d 926, 930–31 (Tex. Crim. App. 2007); *Bellamy v. State*, 742 S.W.2d 677, 682 (Tex. Crim. App. 1987).[3]

The charge did not include the instructions from Section 2.05(a)(2) of the Penal Code, which explain to the jury "how to implement such a presumption." *Hollander v. State*, 414 S.W.3d 746, 749 n.9 (Tex. Crim. App. 2013). The State agreed on original submission that the trial court should have instructed the jury in accordance with Section 2.05(a)(2), which requires instructions as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

Tex. Penal Code Ann. § 2.05(a)(2). When these instructions are included in the jury charge, an otherwise mandatory and unconstitutional presumption will be treated as a permissive presumption that is constitutionally acceptable. *See Garrett*, 220 S.W.3d at 930–31; *Bellamy*, 742 S.W.2d at 682.

Because appellant failed to object to the jury charge on this basis or request the Section 2.05(a)(2) instructions, we will reverse only if he suffered egregious harm. *See Hollander*, 414 S.W.3d at 749–50 (reversing for egregious harm);

---

[3] *See also Hollander v. State*, 414 S.W.3d 746, 754–55 (Tex. Crim. App. 2013) (Cochran, J., concurring) (noting that a mandatory presumption is created by language such as "The law presumes X if Y is proven," and the charge in this case was a mandatory presumption because it stated, "It is presumed that . . . .").

4

*Bellamy*, 742 S.W.2d at 687 (same); *see also Garrett*, 220 S.W.3d at 932 (standard for harm relating to unobjected-to constitutionally erroneous presumption in jury charge was the same as egregious harm). Jury charge error is egregiously harmful if the error affects the very basis of the case, deprives the defendant of a valuable right, vitally affects the defensive theory, or makes a case for conviction clearly and significantly more persuasive. *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). The harm must be actual, not just theoretical. *See id*. (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984)). To make this determination, we will review the entire record, including (1) the complete jury charge, (2) the arguments of counsel, (3) the entirety of the evidence, including the contested issues and weight of the probative evidence, and (4) any other relevant factors revealed by the record as a whole. *E.g., Hollander*, 414 S.W.3d at 749–50.

In undertaking this review, we are mindful of Judge Cochran's observation in *Hollander*: "There is a grave likelihood that a jury charge that does not contain the [Section] 2.05(a)(2) instructions will cause egregious harm to a defendant because of the serious constitutional pitfalls involved in using evidentiary presumptions." *Id.* at 756 (Cochran, J., concurring). "Generally speaking, jury instruction error involving presumptions that appear to be mandatory will cause the defendant 'egregious harm' because they violate the constitutional requirement that the State prove every element of an offense beyond a reasonable doubt." *Id.* Omitting Section 2.05(a)(2) instructions causes two significant problems: (1) the jury is never told it must find the predicate fact proven beyond a reasonable doubt before indulging the presumption; and (2) the jury is never told it is not bound to find the presumed fact based on proof of the predicate fact. *See* Tex. Penal Code Ann. § 2.05(b)(A)–(B); *Hollander*, 414 S.W.3d at 754. The second consequence is our primary concern in this case.

5

We review the record below, ultimately holding that appellant suffered egregious harm because (1) the remainder of the jury charge did not ameliorate the error; (2) the State's arguments exacerbated the error; and (3) the presumed fact, i.e., an intent to harm or defraud, was the primary contested issue at trial, and the evidence was not overwhelming.

## A.    Entire Jury Charge

The jury charge appropriately instructed the jury about the State's general burden to prove all of the elements of the offense beyond a reasonable doubt, but this general instruction alone does not remedy the error in the charge. *See, e.g.,* *Hollander*, 414 S.W.3d at 750 (majority op.). "Such a general instruction fails to educate the jurors with respect to the level of confidence they must have in the verity of the predicate facts before they may rely on the presumption to convict." *Id.* And of course, nothing in the jury charge informed the jury that it was not bound to use the presumption.

This factor weighs in favor of finding egregious harm. *See id.*; *Webber v. State*, 29 S.W.3d 226, 236 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

## B.    Arguments of Counsel

Although the State made several comments that could be viewed as suggesting the presumption was permissive, on balance the State's arguments emphasized the error throughout voir dire and closing arguments.[4]  The State

---

[4] During both voir dire and closing arguments, the State told the jury "you *can* presume." (emphasis added).  But as discussed below, the State made conflicting statements and the majority of the statements suggested the presumption was mandatory.  In its supplemental brief, the State observes that its arguments at trial were conflicting: "Admittedly, the prosecutor also provided some conflicting statements about knowledge and the application of the presumption during voir dire and argument."  In any event, use of the word "can" would not necessarily make the presumption permissive.  *See Alexander v. State*, 757 S.W.2d 95, 99 (Tex. App.—Dallas

6

discussed the presumption during voir dire and told the jury that it would use the presumption to prove appellant's intent:

> But the law in the Texas states that I can prove it circumstantially. How do I do that? Well, there is a presumption we'll talk about later in the statute that says somebody possessing the identifying information of three or more people, not three or more pieces, but three or more people, there is a presumption that you are statutorily presumed that they have intent to harm or defraud another.

When discussing the lack-of-consent element of the statute, one veniremember suggested the State would need to prove that appellant knew he lacked consent. The State said, "We'll get to that in a second," and then discussed the intent element of the statute and the applicability of the presumption:

> There is a statute in the Penal Code that says a person is presumed to have the intent to harm and defraud another if the actor had possession of identifying information of three or more persons. What that means, if I prove that the defendant on his person had identifying information of three or more persons, the jury is to presume he had the intent to harm or defraud another.

When discussing appellant's right to not testify, the State again reiterated that it could prove appellant's intent by reference to the presumption:

> If I proved he possessed three or more identifying pieces of information of three or more people, if I proved he possessed, then you are to presume he had the intent to harm and defraud another. . . . It's important in many cases to prove by circumstantial evidence but in this case the government has said if I prove he possessed three or more pieces of identifying information, then 12 of you can presume he did it.

---

1988, pet. ref'd) (instruction that the jury "may presume" intent was unconstitutional mandatory presumption).

The State actively dissuaded at least one veniremember's concerns about the presumption:

> VENIREPERSON: If you have a teenager who really isn't planning on using them for fraud or anything else, by statute you are guilty?
>
> [PROSECUTOR]: You would. Well, the law states and presumes if you have more than three or more persons['] identifying information, you possess it, you are presumed to have the intent. If somebody is having intent to steal somebody's social security number—now, having said that, is that going to be a problem?
>
> VENIREPERSON: No.

Then, the State went through the entire venire to ensure the veniremembers could follow the presumption:

> [PROSECUTOR]: Anybody first row going to have any sort of issue with the fact that if he has the—with the presumption if he has three or more persons' information?
>
> . . . .
>
> So anybody second row going to have a problem with that presumption? Anyone third row? Fourth row or the back? Juror 65.
>
> VENIREPERSON: If you have your iPad, your iPad download all this information and by statute you have three or more but you don't have intent—
>
> [PROSECUTOR]: Possessing doesn't mean having it on you. You have to know you have it. Once they know they have it. Are you okay with that?
>
> VENIREPERSON: Yes.[5]

During closing arguments, the State discussed the presumption several times: "And as the charge will tell you, if there is more than three people then you

---

[5] Although the State initially seemed to argue that it would need to prove appellant knew he possessed identifying information, the State argued to the jury during closing that it did not need to prove appellant knew he possessed identifying information. *See generally Ramirez-Memije*, 397 S.W.3d at 303–04 (reviewing arguments concerning knowledge of possession).

can presume that he had the intent to defraud or harm." At one point, the State suggested that the presumption was not meant to ensnare the innocent bystander:

> And it was written specifically because now if a person just had a device, without know[ing] what is on it, without the intent to defraud or harm another, is he guilty? Of course, he's not. If somebody mysteriously installs a program on their I-pad [sic] that collects information somehow, well, of course you don't have the intent to defraud or harm another.

However, shortly before the State finished its argument, the State referred to its proof of appellant's intent being "automatic" because of the presumption: "Nobody is disputing that there were 56 credit card numbers in the device. And nobody is disputing that there is a presumption if you have more than three, you automatically have the intent to defraud and harm." Appellant objected because "[t]hat is not the law," but the trial court overruled the objection.

In sum, the State repeatedly emphasized the utility of the presumption and reinforced its binding nature: (1) "there is a presumption that you are statutorily presumed that they have intent to harm or defraud another"; (2) "a person is presumed to have the intent to harm and defraud"; (3) "the jury is to presume he had the intent to harm or defraud"; (4) "you are to presume he had the intent to harm and defraud"; (5) "the law states . . . you are presumed to have the intent"; and (6) "there is a presumption if you have more than three, you automatically have the intent to defraud and harm." The parties never told the jury that it was not bound by the presumption.

This factor weighs in favor of finding egregious harm. *See Hollander*, 414 S.W.3d at 750–51 (finding egregious harm because the parties did not do or say anything during the trial to remedy the deficiency; although some of the State's comments suggested the jury did not need to rely on the presumption to find the

defendant guilty, the State "repeatedly emphasiz[ed] the utility of the presumption"); *Bellamy*, 742 S.W.2d at 681, 686 (finding egregious harm even though the prosecutor told the jury during closing arguments that the presumption was "not binding upon the jury"; reasoning, "While it is true that the prosecutor did not devote an inordinate portion of her final argument to the presumption, she did reread it and commend its use to the jury"); *cf. Tottenham v. State*, 285 S.W.3d 19, 31 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (no egregious harm in part because the State informed the jury "that the presumption could, in some circumstances, not apply, and therefore was permissive, rather than mandatory").

## C.    Contested Issues and Weight of the Evidence

As the Court of Criminal Appeals observed in this case, it was "undisputed that Appellant knowingly had the skimming device, which contained the identifying information, in his possession." *Ramirez-Memije*, 444 S.W.3d at 628. During his testimony, appellant essentially admitted to possessing identifying information of three or more persons. *See id.* Thus, the evidence supporting the predicate fact was overwhelming. Any error regarding omission of the burden-of-proof instruction could not have harmed appellant. *See, e.g.*, *Tottenham*, 285 S.W.3d at 32 ("Where the great weight of evidence supports the facts giving rise to the presumption, egregious harm is not shown."); *Webber*, 29 S.W.3d at 237 (no egregious harm because evidence of the predicate fact was overwhelming); *cf. Hollander*, 414 S.W.3d at 751 (finding egregious harm because the facts giving rise to the presumption were vigorously contested at trial).

However, the Court of Criminal Appeals also acknowledged that appellant's testimony about his lack of knowledge of his possession of identifying information "goes to the mens rea of intent to harm or defraud." *Ramirez-Memije*, 444 S.W.3d at 628. And as this court observed on original submission, appellant's "sole

defense was that he did not know he had obtained or received identifying information by receiving the skimmer." *Ramirez-Memije*, 397 S.W.3d at 302. The evidence supporting the presumed fact was vigorously contested—it was the only element of the offense that appellant contested.

Appellant testified that he had never received any benefits from participating in an illegal skimming scheme; he did not know what the device was; and it looked like a walkie-talkie or recorder. He did not look into it and see what was in it. He did not own any software that could look into the device. One special agent testified that the skimmer "probably looks like an old fashioned beeper." Another special agent testified that a person could "scroll through and see what was on" the skimmer, but he never saw appellant look at the information on the skimmer, and the agent had no information that appellant knew what was on the skimmer.

The State points to other evidence of appellant's intent. A Secret Service agent testified that appellant admitted to receiving cash and electronics for delivering the skimmer to Salazar. But appellant testified that the agent, who spoke with appellant in Spanish, misunderstood the translation, and appellant was talking about purchasing a video game system from Salazar. The State points to a phone conversation appellant had with Salazar when appellant said that Cercen "completed all fifty." But appellant testified that Secret Service agents told him to say this. The State points to Cercen's testimony that appellant told Cercen how to use the skimmer and paid Cercen money to obtain credit card numbers. But appellant denied these accusations.

11

In short, appellant's intent was the sole contested issue, and the evidence of the presumed fact was not overwhelming. This factor weighs in favor of finding egregious harm. *See Bellamy*, 742 S.W.2d at 685–686 (finding egregious harm even though evidence of the predicate fact was "undisputed"; evidence of the presumed fact was not overwhelming and it was "the sole contested issue" at trial); *cf. Tottenham*, 285 S.W.3d at 32 (finding no egregious harm when there was ample circumstantial evidence supporting the presumed fact of intent to defraud or harm and the defendant "did not present any evidence refuting the issue of intent").

## D.     Appellant Suffered Egregious Harm

Under the facts of this case, the unconstitutional mandatory presumption precluded appellant from presenting any defense. Appellant contested the presumed fact by denying knowledge of his possession of identifying information. *See Ramirez-Memije*, 444 S.W.3d at 628. But even if the jury found appellant credible and fully believed that he did not know the skimmer contained identifying information, the jury was required to follow the presumption and "automatically" find that appellant had the requisite intent. The State's voir dire confirmed that every juror would apply the presumption and find appellant guilty, even if appellant "really isn't planning on using [identifying information] for fraud or anything else."

Thus, appellant was deprived of a valuable right to have the jury find an element of the offense—his mens rea—beyond a reasonable doubt. The error affected the very basis of the case, vitally affected his sole defensive theory, and made the case for conviction clearly and significantly more persuasive. Appellant suffered egregious harm.

12

### III. CONCLUSION

Having sustained appellant's second issue, we reverse the trial court's judgment and remand for a new trial.[6]


/s/     Sharon McCally
            Justice


Panel consists of Justices Christopher, Jamison, and McCally.
Publish — Tex. R. App. P. 47.2(b).

---

[6] We decline to address appellant's third issue. *See* Tex. R. App. P. 47.1.