

# NUMBER 13-20-00109-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALEJANDRO CABALLERO,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the County Court at Law No. 5
### of Cameron County, Texas.

# DISSENTING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Dissenting Memorandum Opinion by Chief Justice Contreras**

I agree with the majority that the jury charge was erroneous because it (1) failed to include an incident-specific unanimity instruction, and (2) failed to include the instruction mandated by Texas Penal Code § 2.05(a)(2). However, I respectfully dissent because I would find that appellant was egregiously harmed by the errors.

When a jury charge contains multiple errors, courts may assess the cumulative

effect of the errors in determining whether the appellant suffered egregious harm. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect."); *Abbott v. State*, 196 S.W.3d 334, 349 (Tex. App.—Waco 2006, pet. ref'd).

First, with respect to the lack of an incident-specific unanimity instruction, I would find that the state of the evidence supports a finding of egregious harm. The majority likens this case to *Cosio v. State*, 353 S.W.3d 766, 771–72 (Tex. Crim. App. 2011), in which the Texas Court of Criminal Appeals found no egregious harm resulting from the lack of an incident-specific unanimity instruction. That case is distinguishable. Cosio was charged with four counts of indecency with a child, but the evidence showed multiple instances of misconduct that supported each count; therefore, the court erred by failing to instruct the jury that it had to be unanimous as to which instance supported each count. *Id.* at 774 (noting that "[t]he jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution, committed by Cosio to find him guilty"). Nevertheless, Cosio did not suffer egregious harm from the error, in large part because Cosio's "defense was essentially of the same character and strength across the board" with respect to each of the four instances of misconduct. *Id.* at 777. Specifically, "Cosio's defense was that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because [the complainant] was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate [the complainant's] testimony." *Id.* Because Cosio's defensive theory as to all four instances was that the complainant was not credible, it is "highly likely that the jury's verdicts . . . were, in fact, unanimous." *Id.* at 778

(observing that, "[h]ad the jury believed otherwise, they would have acquitted Cosio on all counts").

Here, as in *Cosio*, there was evidence of multiple discrete instances of misconduct which would have supported a deadly conduct conviction: (1) the stoplight incident, and (2) the Stripes incident. But appellant raised slightly different defensive theories as to each incident—as to the stoplight, appellant claimed that the gun was unloaded and that it was placed in the center console and never brandished; as to Stripes, appellant said he was holding his cell phone, not a gun. Notably, McClain testified he "can't be positive" that appellant was holding a gun at the Stripes, whereas his testimony regarding the stoplight incident was far less equivocal. The "character and strength" of the evidence was not the same with respect to the two instances of misconduct. *Cf. id.* at 777. Unlike in *Cosio*, it is eminently feasible that the jury could have believed one defense but disbelieved the other—and if that was the case, the lack of an incident-specific unanimity instruction directly caused the rendition of a non-unanimous verdict.

Second, I would also find that the record supports a finding of egregious harm with respect to the lack of a § 2.05(a)(2) instruction. I agree with the majority that the lack of such an instruction was error and that there was nothing else in the jury charge to remedy the harm suffered. Moreover, as the majority concedes, the State explicitly informed the venire panel as to the presumption contained in penal code § 22.05(c), but it never similarly informed the jury that, under § 2.05(a)(2), the presumption is not mandatory. *See* TEX. PENAL CODE ANN. § 2.05(a)(2). Both of these factors support a finding of egregious harm.

I would additionally find that the state of the evidence in the record supports such

3

a finding. Penal code § 22.05(c) provides that, for purposes of the deadly conduct offense, "[r]ecklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." *Id.* § 22.05(c). Here, appellant testified that his gun was not loaded, and there was no evidence to the contrary. Without the § 22.05(c) presumption, evidence that a person brandished an unloaded gun would not be enough to prove recklessness or danger to another, two essential elements of the offense of deadly conduct. *See id.* § 6.03(c) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances *as viewed from the actor's standpoint*." (emphasis added)). If the jury believed appellant's uncontroverted testimony that the gun was unloaded, it would still have convicted appellant based on the mandatory presumption in § 22.05(c) and the absence of the required § 2.05(a)(2) instruction.

The majority cites *Neely v. State*, 193 S.W.3d 687–88 (Tex. App.—Waco 2006, no pet.) and *Garrett v. State*, 159 S.W.3d 717, 721 (Tex. App.—Fort Worth 2005), *aff'd*, 220 S.W.3d 926 (Tex. Crim. App. 2007), for the proposition that "where the great weight of the evidence supports the facts giving rise to the presumption, egregious harm has not occurred." But those cases are inapposite because they asked whether the appellant was harmed by the lack of an instruction on § 2.05(a)(2)(D), which states that "if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption,

4

the presumption fails and the jury shall not consider the presumption for any purpose." *See* TEX. PENAL CODE ANN. § 2.05(a)(2)(D). Because the great weight of the evidence supported the predicate facts in those cases, a § 2.05(a)(2)(D) instruction would not have made a difference to the result. Here, on the other hand, appellant was harmed from the lack of an instruction under § 2.05(a)(2)(B), which provides "that if [the predicate facts] are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find." *Id.* § 2.05(a)(2)(B). Section 2.05(a)(2)(B) operates as a constitutional backstop, ensuring that even statutes ostensibly establishing "mandatory" presumptions do not relieve the jury of its responsibility to find each essential element of the offense beyond a reasonable doubt. *See Willis v. State*, 790 S.W.2d 307, 309 (Tex. Crim. App. 1990) ("[M]andatory presumptions are deemed unconstitutional because they eliminate the State's constitutionally required burden of proving guilt beyond a reasonable doubt."). When the instruction is erroneously omitted, a defendant is deprived of this constitutional protection. Here, appellant was harmed by the omission because it deprived him of his right to have the jury find two essential elements of the offense—recklessness and danger—beyond a reasonable doubt. *See Bellamy v. State*, 742 S.W.2d 677, 686 (Tex. Crim. App. 1987) (finding egregious harm from the lack of a § 2.05(a)(2) instruction where the presumed fact—appellant's knowledge that the property received was stolen—was the "sole contested issue," there was conflicting testimony on the issue, and the prosecutor mentioned the presumption to the jury); *Ross v. State*, 594 S.W.3d 566, 572 (Tex. App.—Amarillo 2019, no pet.) (finding egregious harm from the lack of a § 2.05(a)(2)(B) instruction where "the circumstantial evidence of appellant's intent [the presumed fact]

5

largely rested on the predicate facts that give rise to the statutory presumption"); *Ramirez-Memije v. State*, 466 S.W.3d 894, 901 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (finding egregious harm from the lack of a § 2.05(a)(2) instruction where the presumed fact—appellant's intent to defraud or harm—was the "sole contested issue" and the evidence of intent was "not overwhelming").

For the forgoing reasons, and in light of the specific circumstances present here, I would conclude that the charge errors cumulatively caused egregious harm because they affected "the very basis of [appellant's] case," "deprive[d him] of a valuable right," or "vitally affect[ed] a defensive theory." *See Cosio*, 353 S.W.3d at 777; *Chamberlain*, 998 S.W.2d at 238. Accordingly, I would reverse the trial court's judgment and remand for further proceedings. I respectfully dissent.

DORI CONTRERAS
Chief Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed on the
3rd day of June, 2021.

6